1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  SCOTT C. MATHER, State Bar No. 190912
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5709
     Fax:  (415) 703-5843
8    Email:  Scott.Mather@doj.ca.gov

9  Attorneys for Respondent Ben Curry

10

11            IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                 SAN FRANCISCO DIVISION

14

15  **KEITH MacMEEKIN,**                        C07-3771 CRB

16                            Petitioner,

17          v.

18  **B. CURRY, Warden,**

19                            Respondent.

20

21  **ANSWER TO ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND
                         AUTHORITIES**

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3    INTRODUCTION                                                                        1

4    ANSWER TO THE ORDER TO SHOW CAUSE                                                    1

5    MEMORANDUM OF POINTS AND AUTHORITIES                                                 8

6        ARGUMENT                                                                         8

7            THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS
             CLAIMS WAS NOT CONTRARY TO OR AN UNREASONABLE
8            APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW,
             NOR BASED ON AN UNREASONABLE DETERMINATION OF THE
9            FACTS.                                                                       8

10           A.    Petitioner Received All Process Due Under the Only United States
                   Supreme Court Law Addressing Due Process in the Parole Context.        9
11
             B.    The Ninth Circuit's Some-Evidence Test Is Not Clearly Established
12                 Supreme Court Law, and thus Is Not Applicable to Petitioner's Claims
                   Under AEDPA.                                                          10
13
             C.    Even if the Some-Evidence Standard Was Clearly Established
14                 Federal Law, the Standard Was Correctly Applied by the State
                   Court.                                                                13
15
             D.    Petitioner Cannot Demonstrate that the State Court Unreasonably
16                 Rejected His Remaining Claims.                                         16

17                 1.    Petitioner erroneously argues that he is entitled to parole based
                         on the language of California Penal Code section 3041(a).        16
18
                   2.    Petitioner's Conclusory and Vague Allegation that the Board
19                       Discriminated "Amongst the Class Serving Indeterminate
                         Sentences" Is Insufficient to Demonstrate that the Board's 2006
20                       Parole Denial Violated His Equal Protection Rights.             17

21   CONCLUSION                                                                          18

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

Page

3 **Cases**

4  *Benny v. U.S. Parole Comm'n*
   295 F.3d 977 (9th Cir. 2002)                                          7

5
   *Biggs v. Terhune*
6  334 F.3d 910 (9th Cir. 2003)                                          7

7  *Boehme v. Maxwell*
   423 F.2d 1056 (9th Cir. 1970)                                        17
8
   *Carey v. Musladin*
9  __ U.S. __, 127 S. Ct. 649 (2006)                                6, 10-13

10 *City of Cleburne v. Cleburne Living Ctr.*
   473 U.S. 432 (1985)                                                  18
11
   *Crater v. Galaza*
12 491 F.3d 1119 (9th Cir. 2007)                                        11

13 *Foote v. Del Papa*
   492 F.3d 1026 (9th Cir. 2007)                                        11
14
   *Fraley v. United States Bureau of Prisons*
15 1 F.3d 924 (9th Cir. 1993)                                           18

16 *Greenholtz v. Inmates of Neb. Pen. & Corr. Complex*
   442 U.S. 1 (1979)                                   6, 7, 9, 12-14, 18
17
   *Gutierrez v. Griggs*
18 695 F.2d 1195 (9th Cir. 1983)                                        16

19 *In re Dannenberg*
   34 Cal. 4th 1061 (2005)                                        6, 16, 17
20
   *In re Rosenkrantz*
21 29 Cal. 4th 616 (2002)                                            7, 13

22 *Irons v. Carey*
   __ F.3d __, 2007 WL 3256594 at *2-4 (9th Cir. Nov. 6, 2007)          12
23
   *Irons v. Carey*
24 505 F.3d 846 (9th Cir. 2007)                                        17

25 *Jancsek v. Oregon Board of Parole*
   833 F.2d 1289 (9th Cir. 1987)                                       10
26
   *Jones v. Gomez*
27 66 F.3d 199 (9th Cir. 1995)                                         17

28

Answer to OSC; Mem. of P. & A.                    *MacMeekin v. Curry*
                                                   C07-3771 CRB

**TABLE OF AUTHORITIES** (continued)

|  | Page |
|---|---|
| *Juan H. v. Allen*<br>408 F.3d 1262 (9th Cir. 2005) | 14 |
| *Lockyer v. Andrade*<br>583 U.S. 63 (2003) | 9 |
| *Middleton v. Cupp*<br>768 F.2d 1083 (9th Cir. 1985) | 17 |
| *Nguyen v. Garcia*<br>477 F.3d 716 (9th Cir. 2007) | 12 |
| *Pedro v. Or. Parole Bd.*<br>825 F.2d 1396 (9th Cir. 1987) | 9 |
| *Pulley v. Harris*<br>465 U.S. 37 (1984) | 17 |
| *Rompilla v. Beard*<br>545 U.S. 374 (2005) | 11 |
| *Rose v. Hodges*<br>423 U.S. 19 (1975) | 16 |
| *Sandin v. Conner*<br>515 U.S. 472 (1995) | 6 |
| *Sass v. Cal. Bd. of Prison Terms*<br>461 F.3d 1123 (9th Cir. 2006) | 6, 13 |
| *Schriro v. Landrigan*<br>___U.S.___, 127 S. Ct. 1933 (2007) | 11, 12 |
| *Sturm v. Cal. Adult Authority*<br>395 F.2d 446 (9th Cir. 1967) | 18 |
| *Superintendent v. Hill*<br>472 U.S. 445 (1985) | 7, 10, 13, 14, 16 |
| *Wainwright v. Greenfield*<br>474 U.S. 284 (1986) | 12 |
| *Wiggins v. Smith*<br>539 U.S. 510 (2003) | 11 |
| *Wilkinson v. Austin*<br>545 U.S. 2384 (2005) | 9, 12 |
| *Williams v. Taylor*<br>529 U.S. 362 (2000) | 8 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES  (continued)**

**Page**

*Wolff v. McDonnell*
418 U.S. 539 (1974)                                          12

*Ylst v. Nunnemaker*
501 U.S. 797 (1991)                                          9

**Constitutional Provisions**

United States Constitution
    Fourteenth Amendment                              18
    Sixth Amendment                                   12
    amend. XIV                                        18

**Statutes**

United States Code, Title 28
    § 2241(c)(3)                                      17
    § 2254                                            17
    § 2254(a)                                       6, 17
    § 2254(d)                                   7, 10, 13
    § 2254(d)(1)-(2)                              8, 11
    § 2254(e)                                          8
    § 2254(e)(1)                                      14

California Code of Regulations, Title 15
    § 2402(b)                                         15

Penal Code
    § 3041                                       6, 7, 16
    § 3041(a)                                         17
    § 3046(c)                                         16

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  SCOTT C. MATHER, State Bar No. 190912
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone: (415) 703-5709
     Fax: (415) 703-5843
8    Email: Scott.Mather@doj.ca.gov

9  Attorneys for Respondent Ben Curry

10

11            IN THE UNITED STATES DISTRICT COURT

12         FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

15  **KEITH MacMEEKIN,**                          C07-3771 CRB

16                              Petitioner,   **ANSWER TO ORDER TO
                                              SHOW CAUSE;
17            v.                              MEMORANDUM OF POINTS
                                              AND AUTHORITIES**
18  **B. CURRY, Warden,**

19                              Respondent.   Judge:    The Honorable
                                                        Charles R. Breyer
20

21                     **INTRODUCTION**

22      Petitioner Keith MacMeekin is a California state inmate incarcerated at the Correctional

23  Training Facility in Soledad, California, proceeding pro per in this habeas corpus action.

24  Petitioner alleges that the Board of Parole Hearings unconstitutionally denied him parole at his

25  March 2006 parole consideration hearing.  Respondent Warden Ben Curry answers as follows:

26            **ANSWER TO THE ORDER TO SHOW CAUSE**

27      In response to the Petition for Writ of Habeas Corpus and this Court's November 16, 2007

28  Order to Show Cause, Respondent admits, denies, and alleges the following:

Answer to OSC; Mem. of P. & A.                           *MacMeekin v. Curry*
                                                          C07-3771 CRB

1.   Petitioner is lawfully within the custody of the California Department of Corrections and Rehabilitation pursuant to a 1986 judgment of the Orange County Superior Court sentencing him to an indeterminate term of fifteen years to life following his conviction of second-degree murder. (Ex. 1, Judgment - Commitment, Abstract of Judgment - Commitment; Ex. 2, Mar. 14, 2006 Subsequent Parole Consideration Hearing Transcript, at 1.)  Petitioner does not challenge the validity of the conviction or sentence in his petition.  Rather, he alleges that the Board of Parole Hearings unlawfully denied him parole at his March 2006 parole consideration hearing. (*See generally* Pet.)

2.   Petitioner does not contest that he received notice of his 2006 parole hearing, had an opportunity to appear at the hearing (which he declined), and received a copy of the Board's decision finding him unsuitable for parole. (*See generally* Pet.; Ex. 2 at 2.)

3.   The Board denied Petitioner parole at his 2006 hearing, finding that his release would pose an "unreasonable risk of danger to society or a threat to public safety."  The Board's decision was based on several factors, including the gravity of Petitioner's commitment offense.

As reflected in the Board hearing transcript, Petitioner's murder offense occurred on September 24, 1985.  Las Palmas Police Officers responded to calls from an apartment complex reporting sounds of a struggle and a woman screaming coming from an apartment where a 17-year-old boy (Petitioner) and his mother lived.  After police entered the apartment, they observed signs of a struggle.  In the master bedroom, the police located the victim (the mother) lying on the floor.  The victim had blood and lacerations to both of her hands (and a broken finger), blood in her mouth, her eyes were closed and puffy, and there was a man's necktie around her neck (a subsequent autopsy determined that the cause of death was strangulation).

An investigation revealed that the victim's car was missing and that her son (Petitioner) had not reported to work.  A witness later stated that the victim and Petitioner had been having problems due to his cocaine use and alcohol abuse.  The witness also stated that the victim had previously kicked Petitioner out of the apartment approximately a month before the murder, but had subsequently let him move back in.  The witness indicated that Petitioner and his mother each had a bad temper, and that they argued and had fistfights.

Answer to OSC; Mem. of P. & A.                                                    *MacMeekin v. Curry*
                                                                                  C07-3771 CRB

2

1    On September 26, 1985, Petitioner was detained by immigration officers when he attempted

2 to return to the United States after having traveled to Mexico. Petitioner subsequently provided a

3 written confession to the murder of his mother. (Ex. 2 at 3-5,36-38; Ex. 3, Probation Officer's

4 Report at 3-6; Ex. 4, Sept. 2005 Life Prisoner Evaluation Report [Board Report] at 1-2.)

5    4.    The Board considered Petitioner's version of the murder offense, as described in the

6 September 2005 Board Report. Petitioner indicated that between the hours of 7:00 p.m. and 5:00

7 a.m. on September 23 and 24, 1985, he had consumed sixteen eight-ounce bottles of beer,

8 smoked two joints of marijuana, and snorted one and a half grams of cocaine. Petitioner stated

9 that when his mother woke him up on September 24 at about 7:00 a.m., urging him to go to

10 work, they got into a "physical" argument. Petitioner admitted that during the argument he

11 picked up a knife from the kitchen table and "warned his mother to back off." Petitioner stated

12 that his mother tried to take the knife from him and during the altercation he backed up against

13 the wall, causing a mirror to fall down on his foot. In response, Petitioner claimed that he bent

14 down and "somehow cut into his mother's side." When she screamed, he threw the knife away.

15 Petitioner's mother then began to beat him on the face and, in response, Petitioner "went for her

16 neck." Petitioner stated that he choked her with both hands and, not knowing if she was dead

17 yet, decided "to put her out of her misery." Petitioner thus took a necktie, knotted it around his

18 mother's neck, and strangled her until she no longer moved. After dragging his mother's body

19 into her bedroom, Petitioner took his mother's wallet from her purse, grabbed some clothes, and

20 disconnected the phone in order to prevent her from calling the police if she were still alive.

21 Petitioner went out the front door, locking it behind him, and left the apartment. Petitioner

22 claims that he later decided to turn himself in. (Ex. 2 at 5-9; Ex. 4 at 2-3.)

23    5.    In denying him parole, the Board found that Petitioner's murder offense was carried

24 out in a manner that was "cruel" and demonstrated a "violent rage." The Board based this

25 finding on the evidence indicating that as a result of an argument about his use of drugs and not

26 going to work, he stabbed his mother with a knife, began to strangle her with his bare hands, and

27 then—to "put her out of her misery"—strangled her with a necktie until she no longer moved.

28 The Board also found that this murder was carried out in a manner that "demonstrates a callous

Answer to OSC; Mem. of P. & A.                                      *MacMeekin v. Curry*
                                                                     C07-3771 CRB

1  disregard for human suffering" not only with regard to how Petitioner killed his mother, but also

2  because Petitioner disconnected the telephone so that his mother could not call for help even if

3  she survived his attack, and then he proceeded to flee to Mexico after taking his mother's money

4  and her car. (Ex. 2 at 36-38.)

5      6.   The Board found that Petitioner's criminal history consisted of only "two minor

6  juvenile arrests." (Ex. 2 at 38.) But the Board also considered that Petitioner had "a social

7  history that includes alcohol abuse at a very young age as well as illegal narcotics use." (Ex. 2 at

8  38. *See also* Ex. 2 at 19-20; Ex. 4 at 3-4; Ex. 5, Oct. 2, 2003 Psychological Evaluation, at 4-5.)

9      7.   The Board considered that Petitioner lacked adequate, verified parole plans. The

10  Board found that Petitioner "needs to develop viable residential plans" and to "continu[e] his

11  search for acceptable employment plans." (Ex. 2 at 38-39; *see also id.* at 12-18 [Board's

12  discussion of Petitioner's parole plans during the hearing].)

13      8.   The Board considered that Dr. Steward's October 2003 psychological evaluation was

14  favorable, but conditional. Specifically, Dr. Steward opined that Petitioner would pose a low risk

15  of future dangerousness, but that the "most significant risk factor which could be a precursor to

16  violence for [Petitioner] is the return to alcohol or cocaine abuse." (Ex. 2 at 38. *See also id.* at

17  19; ex. 5 at 5.)

18      9.   In response to Penal Code section 3042 notices regarding Petitioner's parole hearing,

19  the Board also considered opposition to parole from the Orange County District Attorney's

20  Office. (Ex. 2 at 39; *see also id.* at 21-25 [Deputy District Attorney's closing statement].)

21      10.  In addressing Petitioner's decision to not personally attend his parole hearing, the

22  Board stated that it would have liked to discuss with Petitioner not merely the circumstances of

23  the murder offense, but the extent of his insight into that offense. (Ex. 2 at 39-41.)

24      11.  Although it denied him parole, the Board panel commended Petitioner on his progress

25  in prison, including being disciplinary free, earning his GED and college credits, his positive

26  work reports, attendance at AA, and his vocational achievements. The Board found, however,

27  that "those positive aspects of his behavior do not outweigh the factors of unsuitability." (Ex. 2

28  at 41.)

Answer to OSC; Mem. of P. & A.          *MacMeekin v. Curry*

C07-3771 CRB

12.   In a separate decision, the Board deferred further parole consideration for two years rather than the minimum one-year period, finding that "it is not reasonable to expect that parole would be granted at a [h]earing during the next two years." The Board then described the evidence supporting this decision, which was generally the same as the evidence supporting the Board's decision to deny parole. (Ex. 2 at 41-43.)

13.   Before filing his federal petition, Petitioner sought relief in the state courts, generally raising the same claims raised in his federal petition. The last reasoned decision was issued by the Orange County Superior Court in August 2006, which denied his petition on the ground that the Board's "determination . . . concerning petitioner's parole suitability is supported by some evidence in the record." The court further found that in support of its decision denying parole, the Board "reasonably relied" on the gravity of Petitioner's commitment offense, his unstable social history, lack of viable parole plans, and the Orange County District Attorney's opposition to parole. In addition, the court found that Petitioner had not alleged a "viable and meritorious argument" supporting his equal protection claim. (Ex. 6, Cal. Super. Ct. Pet.;[1] Ex. 7, Cal. Super. Ct. Order.)

14.   Petitioner then filed a petition for habeas corpus in the California Court of Appeal, generally raising the same claims as in his federal petition. (Ex. 8, Cal. Ct. Appeal Pet.) The court summarily denied the petition in February 2007. (Ex. 9, Cal. Ct. Appeal Order.) Petitioner then filed a petition for review in the California Supreme Court, generally raising the same claims as in his federal petition. (Ex. 10, Cal. Sup. Ct. Pet.) The court summarily denied the petition in May 2007. (Ex. 11, Cal. Sup. Ct. Order.)

15.   Based on the orders issued in his state court proceedings, Petitioner appears to have exhausted his cognizable claims in the instant petition. Respondent does not admit Petitioner has exhausted his claims to the extent they are more broadly interpreted to encompass any systematic

---

1.   Because Petitioner's exhibits filed in support of his state court petitions have also been filed in support of his federal petition, Respondent omits them from state court petitions attached as exhibits to this filing. If the Court orders these documents to be submitted, however, Respondent will promptly provide them.

Answer to OSC; Mem. of P. & A.                                                        *MacMeekin v. Curry*
                                                                                         C07-3771 CRB

5

1  issues beyond this particular parole consideration hearing.

2      16.  Respondent denies that Petitioner has shown that the state court's denial of

3  habeas corpus was contrary to, or involved an unreasonable application of, clearly established

4  Supreme Court law, or that the denial was based on an unreasonable determination of facts in

5  light of the evidence presented.  Petitioner therefore fails to make a case for relief under the

6  Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

7      17.  Respondent denies that Petitioner has a federally protected liberty interest in parole.

8  *Greenholtz v. Inmates of Neb. Pen. & Corr. Complex*, 442 U.S. 1 (1979); *In re Dannenberg*, 34

9  Cal. 4th 1061, 1087-88 (2005) (clarifying that under California Penal Code section 3041, the

10  setting of a parole release date is neither mandatory nor presumed); *Sandin v. Conner*, 515 U.S.

11  472, 484 (1995); *contra Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006).

12  Accordingly, because Petitioner is not in custody in violation of federal law, he has not alleged a

13  federal question and this Court does not have subject matter jurisdiction to decide his petition.

14  28 U.S.C. § 2254(a).

15      18.  Respondent affirmatively alleges that even if Petitioner has a federally protected liberty

16  interest in parole, Petitioner had an opportunity to appear for his March 2006 hearing, which he

17  declined (Ex. 2 at 2), and the Board provided him with a detailed explanation as to why he was

18  denied parole (*id.* at 36-44).  Hence, Petitioner received all the process due under *Greenholtz*, the

19  only clearly established Supreme Court law regarding the due process rights of inmates at parole

20  consideration hearings.

21      19.  Respondent affirmatively alleges that there is no United States Supreme Court decision

22  requiring a state parole decision to be supported by some evidence.  *See Carey v. Musladin*, __

23  U.S. __, 127 S. Ct. 649, 654  (2006) (holding that the absence of Supreme Court law on a

24  particular issue precludes habeas relief under AEDPA).  Thus, Petitioner has not shown that the

25  state court's denial of habeas corpus was contrary to, or involved an unreasonable application of,

26  clearly established Supreme Court law, or that the denial was based on an unreasonable

27  determination of facts in light of the evidence presented.  Hence, Petitioner fails to make a prima

28  facie case for relief under AEDPA.

Answer to OSC; Mem. of P. & A.                                                    *MacMeekin v. Curry*
                                                                                  C07-3771 CRB

20. If an evidentiary standard of review applies, Respondent denies that the state court unreasonably determined that it is the some-evidence standard. Respondent denies that the preponderance-of-the-evidence standard, and not the some-evidence standard, is the appropriate standard of review. *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *Biggs v. Terhune*, 334 F.3d 910, 915 (9th Cir. 2003); *see Greenholtz*, 442 U.S. at 15 (finding that the executive decisionmaker need not specify the evidence relied on when denying parole); *Rosenkrantz*, 29 Cal. 4th at 658, 665 (adopting the some-evidence test and distinguishing it from "considering whether substantial evidence supports the findings underlying a gubernatorial decision").

21. Respondent affirmatively alleges that the state court reasonably determined that the Board's 2006 decision denying Petitioner parole, and further parole consideration for two years, was supported by some evidence.

22. Respondent denies that state court unreasonably rejected Petitioner's claim that the Board was required to parole Petitioner in 2006 based on the statutory language of Penal Code section 3041, and affirmatively alleges that a violation of state law is not cognizable in federal habeas corpus.

23. Respondent denies that the state court unreasonably rejected Petitioner's claim that the evidence in favor of parole mandated that the Board find Petitioner suitable for parole or that the Board did not afford sufficient weight to the evidence in favor of parole.

24. Respondent denies that the state court unreasonably rejected Petitioner's claim that the Board's 2006 parole denial violated his equal protection rights.

25. Respondent denies that the Board's decision denying parole violated Petitioner's federal due process rights.

26. Respondent affirmatively alleges that Petitioner fails to state or establish any grounds for federal habeas corpus relief. 28 U.S.C. § 2254(d).

27. Respondent affirmatively alleges that if the Petition is granted, Petitioner's remedy is limited to a new parole consideration hearing before the Board that comports with due process. *Benny v. U.S. Parole Comm'n*, 295 F.3d 977, 984-85 (9th Cir. 2002) (finding that the Board must exercise the discretion in determining whether or not an inmate is suitable for parole); *In re*

Answer to OSC; Mem. of P. & A.                                    *MacMeekin v. Curry*
C07-3771 CRB

1  *Rosenkrantz,* 29 Cal. 4th 616, 658 (2002) (finding that the proper remedy if a Board decision

2  lacks some evidence is a new hearing that comports with due process).

3      28.   Respondent does not allege that there is any procedural bar to this action, including

4  statute of limitations or non-retroactivity.

5      29.   Respondent denies that an evidentiary hearing is necessary in this matter. 28 U.S.C. §

6  2254(e).

7      30.   Except as expressly admitted above, Respondent denies, generally and

8  specifically, each and every allegation of the Petition, and specifically denies that Petitioner's

9  administrative, statutory, or constitutional rights have been violated in any way.

10     For the reasons stated in this Answer and in the following Memorandum of Points and

11 Authorities, this Court should deny the Petition.

12                    **MEMORANDUM OF POINTS AND AUTHORITIES**

13                                  **ARGUMENT**

14     **THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS
       CLAIMS WAS NOT CONTRARY TO OR AN UNREASONABLE
15     APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW,
       NOR BASED ON AN UNREASONABLE DETERMINATION
16     OF THE FACTS.**

17     Under AEDPA, when a state inmate's claim has been adjudicated on the merits in state

18 court, a federal court may grant a writ of habeas corpus on the same claim only if the state court's

19 adjudication was either (1) "contrary to, or involved an unreasonable application of, clearly

20 established Federal law, as determined by the Supreme Court of the United States;" or (2) "based

21 on an unreasonable determination of the facts in light of the evidence presented at the State Court

22 proceeding." 28 U.S.C. § 2254(d)(1)-(2).

23     "Clearly established federal law, as determined by the Supreme Court of the United States,"

24 refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time

25 of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court

26 decision is contrary to established federal law if "the state court applies a rule that contradicts the

27 governing law set forth in [United States Supreme Court] cases," or "the state court confronts a

28 set of facts that are materially indistinguishable from a decision of [the United States Supreme]

1    Court and nevertheless arrives at a result different from [the Court's] precedent." *Lockyer v.*

2    *Andrade*, 583 U.S. 63, 73 (2003) (citations and internal quotation marks omitted). A state court

3    decision is an unreasonable application of clearly established law "if the state court identifies the

4    correct governing legal principle from [the United States Supreme Court's] decision but

5    unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75. It is not enough

6    that the state court applies the law erroneously or incorrectly; rather, the application must be

7    objectively unreasonable. *Id.* at 75-76.

8      When, as here, the California Supreme Court denies a habeas corpus petition without

9    comment, the federal court will look to the last reasoned decision as the basis for the state court's

10   judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). In this case, the last reasoned

11   decision is the Orange County Superior Court's order denying Petitioner's habeas claims. (Ex.

12   7.) As this decision is neither contrary to or an unreasonable application of federal law, nor

13   based on an unreasonable determination of the facts in light of the evidence presented, Petitioner

14   fails to establish a violation of AEDPA standards. Therefore, his petition for writ of habeas

15   corpus must be denied.

16   **A.**    **Petitioner Received All Process Due Under the Only United States Supreme**
           **Court Law Addressing Due Process in the Parole Context.**

17

18      The setting of a parole date is not part of the criminal prosecution so the full panoply of

19   rights afforded a defendant in a criminal proceeding are not constitutionally mandated in a parole

20   proceeding. *Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). The only

21   Supreme Court decision to address the requirements of due process at a parole consideration

22   hearing has held that a parole board's procedures are constitutionally adequate if the inmate is

23   given an opportunity to be heard and a decision informing him of the reasons he did not qualify

24   for parole. *Greenholtz*, 442 U.S. at 16.[2]

25  

26      2. The Supreme Court has continued to cite *Greenholtz* approvingly for the proposition that
the "level of process due for inmates being considered for release on parole includes an opportunity

27   to be heard and notice of any adverse decision" and noted that *Greenholtz* remains "instructive for
[its] discussion of the appropriate level of procedural safeguards." *Wilkinson v. Austin*, 545 U.S.

28   2384, 2397 (2005).

Answer to OSC; Mem. of P. & A.                           *MacMeekin v. Curry*
                                                      C07-3771 CRB

1    Here, Petitioner does not contend that he failed to receive an opportunity to be

2  heard—although he declined to appear at the March 2006 hearing—and a statement of the

3  grounds for which the Board found him unsuitable for parole. (*See generally* Pet.) Similarly, the

4  Board's hearing transcript reflects that Petitioner received an opportunity to be heard, which he

5  voluntarily declined (Ex. 2 at 2), and that the Board issued a decision informing him of the

6  grounds upon which he was denied parole (*id.* at 36-44). Accordingly, because Petitioner thus

7  received all the process due under the United States Supreme Court precedent finding a federal

8  liberty interest in discretionary parole release, the state court decision was not contrary to or an

9  unreasonable application of clearly established federal law as determined by the United States

10  Supreme Court. *See* 28 U.S.C. § 2254(d).

11  **B.     The Ninth Circuit's Some-Evidence Test Is Not Clearly Established Supreme Court
       Law, and thus Is Not Applicable to Petitioner's Claims Under AEDPA.**

12

13    Petitioner argues that the Board's decision must be overturned because it is not

14  supported by some evidence. (*See generally* Pet.) This argument stems from the holding in *Hill*,

15  472 U.S. at 455, in which the United States Supreme Court determined that some evidence must

16  support the decision of a prison disciplinary board to revoke good time credits. In *Jancsek v.*

17  *Oregon Board of Parole*, 833 F.2d 1289, 1290 (9th Cir. 1987), the Ninth Circuit held that this

18  standard applies not only in the disciplinary context, but the parole context as well, and that some

19  evidence must support the Board's denials of parole. Because the holding in *Jancsek* is not

20  clearly established federal law under AEDPA standards, the some-evidence standard may not be

21  applied in federal habeas proceedings challenging parole denials.

22    As the Supreme Court clarified in *Musladin*, 127 S. Ct. at 654, where the Court has not

23  applied a test or standard to a certain type of case it cannot be said that the failure of a state court

24  to do so was an unreasonable application of clearly established federal law. In *Musladin*, the

25  petitioner challenged a state court decision finding that the fact that the victim's family wore

26  buttons displaying the victim's image at the defendant's trial was not inherently prejudicial. *Id.*

27

28

Answer to OSC; Mem. of P. & A.                                                    *MacMeekin v. Curry*
                                                                                   C07-3771 CRB

1 │ at 650. The Ninth Circuit held that the state court decision was contrary to or an unreasonable

2 │ application of federal law regarding state-sponsored courtroom practices. *Id.* In reversing the

3 │ Ninth Circuit, the Supreme Court noted that although it had articulated a test to determine

4 │ whether state-sponsored courtroom practices were inherently prejudicial, it had never addressed

5 │ the issue of whether conduct by a private party was so prejudicial that it deprived the defendant

6 │ of his right to a fair trial. *Id.* at 654. "Given the lack of holdings" on the specific issue, the Court

7 │ reversed the Ninth Circuit and held that the state court's decision was not an unreasonable

8 │ application of federal law. *Id.*

9 │ The Supreme Court has since reiterated its holding in *Musladin*, confirming that a state

10 │ court decision cannot be contrary to or an unreasonable application of federal law where the

11 │ Court has not addressed what protection or test is required in a specific factual or legal scenario.

12 │ In *Schriro v. Landrigan*, ___U.S.___, 127 S. Ct. 1933 (2007), the Ninth Circuit found that the

13 │ state court unreasonably applied *Wiggins v. Smith*, 539 U.S. 510 (2003) and *Rompilla v. Beard*,

14 │ 545 U.S. 374, 381 (2005) when it denied federal habeas relief to a defendant asserting ineffective

15 │ assistance of counsel, despite the fact that he had refused to allow the presentation of any

16 │ mitigating evidence. *Landrigan*, 127 S. Ct. at 1942. The Supreme Court reversed that part of the

17 │ decision after distinguishing the facts of the case from those in *Wiggins* and *Rompilla*. *Wiggins*

18 │ did not address a situation in which the client had interfered with counsel's efforts to present

19 │ mitigating evidence. *Id.* And in *Rompilla*, the defendant had not informed the court that he did

20 │ not want mitigating evidence presented. *Id.* Because the high court had never addressed a

21 │ situation like the one raised in *Landrigan*, the state court's decision was not objectively

22 │ unreasonable. *Id.*

23 │ Several recent Ninth Circuit decisions also emphasize that there can be no clearly

24 │ established federal law where the Supreme Court has never addressed a particular issue or

25 │ applied a certain test to a specific type of proceeding. *Crater v. Galaza*, 491 F.3d 1119, 1122-23,

26 │ 1126-27 & n.8 (9th Cir. 2007) (citing *Musladin*, the Ninth Circuit acknowledged that decisions

27 │ by courts other than the Supreme Court as "non-dispositive" under § 2254(d)(1)); *Foote v. Del*

28 │ *Papa*, 492 F.3d 1026, 1029-30 (9th Cir. 2007) (affirming district court's denial of petition

Answer to OSC; Mem. of P. & A.                                    *MacMeekin v. Curry*
                                                                  C07-3771 CRB

1   alleging ineffective assistance of appellate counsel based on an alleged conflict of interest

2   because no Supreme Court case has held that such an irreconcilable conflict violates the Sixth

3   Amendment); *Nguyen v. Garcia*, 477 F.3d 716, 718, 727 (9th Cir. 2007) (holding that state

4   court's decision finding *Wainwright v. Greenfield*, 474 U.S. 284 (1986) did not apply to a state

5   court competency hearing was not contrary to clearly established federal law because Supreme

6   Court had not held that *Wainwright* applied to competency hearings).

7          Because the Supreme Court developed the some-evidence standard in the context of a

8   prison disciplinary hearing, which is fundamentally different from a parole proceeding, applying

9   this standard to a parole decision cannot be clearly established federal law. *Musladin*, 127 S. Ct.

10  at 654; *Landrigan*, 127 S. Ct. at 1942 *Irons v. Carey*, __ F.3d __, 2007 WL 3256594 at *2-4 (9th

11  Cir. Nov. 6, 2007) (en banc) (Kleinfeld, J., and Bea, J., dissenting).  The level of due process

12  protections to which an inmate is entitled is directly related to the level of his liberty interest and

13  the nature of the decision being made. *Greenholtz*, 442 U.S. at 13-14.  At a disciplinary hearing,

14  the inquiry is retrospective and factual in nature, and the prisoner faces a potential loss of credits.

15  *Greenholtz*, 442 U.S. at 14.  But a decision to parole an inmate is fundamentally different.  First,

16  the level of liberty interest an inmate has in the possibility of parole is markedly different from

17  that of an inmate who is facing a loss of credits.  *Wolff v. McDonnell*, 418 U.S. 539, 560-61

18  (1974) (contrasting the different interests that a parolee and a prisoner may have in their

19  deprivation of liberty); *Greenholtz*, 442 U.S. at 13-14 (distinguishing the parole suitability

20  decision from the parole revocation and disciplinary decisions).  Second, a parole decision is not

21  factual in nature.  Rather, it is a predictive and subjective decision requiring discretionary

22  analysis of the inmate's suitability for release.  *Greenholtz*, 442 U.S. at 9-10; *Wilkinson*, 545 U.S.

23  at 229.  In fact, due to the discretionary nature of parole decisions, the Supreme Court has held

24  that, in contrast to prison disciplinary hearings, due process does not require the decision-maker

25  to specify the evidence showing that a prisoner is unsuitable for parole.  *Greenholtz*, 442 U.S. at

26  15.

27          In summary, applying the some-evidence standard to a parole proceeding is not clearly

28  established federal law.  Instead, the *only* clearly established Supreme Court authority describing

Answer to OSC; Mem. of P. & A.                                              *MacMeekin v. Curry*
                                                                            C07-3771 CRB

12

1  the process due when there is a federal liberty interest in parole simply requires that the inmate be

2  given an opportunity to be heard and advised of the reasons he was not found suitable for parole.

3  *Greenholtz*, 442 U.S. at 16.  Indeed, in *Greenholtz* the Supreme Court rejected the argument that

4  due process requires an evidentiary standard of review in parole cases, holding that there is

5  "nothing in the due process concepts as they have thus far evolved that requires the Parole Board

6  to specify the particular 'evidence' . . . on which it rests the discretionary determination that an

7  inmate is not ready for conditional release." *Id.* at 15-16.  The Supreme Court has thus explicitly

8  rejected the notion that a parole decision must be supported by any particular quantum of

9  evidence. *Id.*

10        Accordingly, because application of the some-evidence standard to parole denial

11  challenges is not clearly established Supreme Court law regarding federal due process, AEDPA

12  precludes this standard from being applied to Petitioner's claims in this case.  *See* 28 U.S.C. §

13  2254(d); *Musladin*, 127 S. Ct. at 654.

14  **C.    Even if the Some-Evidence Standard Was Clearly Established Federal Law, the**
      **Standard Was Correctly Applied by the State Court.**
15

16        Even if the some-evidence standard was clearly established federal law for AEDPA

17  purposes, Petitioner's claim would nonetheless fail because he cannot show that the state court

18  unreasonably applied this standard or made an unreasonable determination of the facts.  Under

19  California law the proper level of judicial review is whether "some evidence in the record before

20  the Board supports the decision to deny parole, based upon the factors specified by statute and

21  regulation." *Rosenkrantz*, 29 Cal. 4th at 658.  Similarly, as a matter of federal due process, the

22  some-evidence standard "does not require examination of the entire record, independent

23  assessment of the credibility of witnesses, or weighing of the evidence;" rather, it is satisfied if

24  there is "any evidence in the record that could support the conclusion reached by the [B]oard."

25  *Hill*, 472 U.S. at 455-57; *see also Sass*, 461 F.3d at 1129 (stating that "*Hill's* some evidence

26  standard is minimal").

27        Although Petitioner invites the Court to re-examine the facts of his case and re-weigh the

28  evidence presented to the Board, AEDPA does not permit this degree of judicial intrusion.

1  Petitioner bears the burden of proving that the state court's factual determinations were

2  objectively unreasonable. 28 U.S.C. § 2254(e)(1); *Juan H. v. Allen*, 408 F.3d 1262, 1270 (9th

3  Cir. 2005).  So long as the state court's reasoned decision was a reasonable determination of the

4  facts presented, Petitioner's claim must fail.

5         Moreover, in assessing the state court's review of Petitioner's claims, not only should the

6  appropriate deference be afforded under AEDPA to the state court's review, but deference is also

7  due to the underlying Board decision.  The Supreme Court has recognized the difficult and

8  sensitive task faced by the Board members in evaluating the advisability of parole release.

9  *Greenholtz*, 442 U.S. at 9-10.  Thus, contrary to Petitioner's belief that he should be paroled

10 based on the evidence in support of parole presented at the hearing (Pet at 3-C), the Supreme

11 Court has stated that in parole release, there is no set of facts which, if shown, mandate a

12 decision favorable to the inmate.  *Greenholtz*, 442 U.S. at 9-10.  Instead, under the some-

13 evidence standard, the court's inquiry is limited solely to determining whether the state court

14 properly found that the Board's decision to deny parole is supported by some evidence in the

15 record, i.e., any evidence. *Hill*, 472 U.S. at 455.

16        Here, Petitioner cannot show that the state court's decision denying him relief was based

17 on an unreasonable application of the *Hill* some-evidence standard or an unreasonable

18 determination of the facts.  In upholding the Board's parole denial, the state court found that the

19 Board's decision was supported by some evidence as to its findings regarding the gravity of

20 Petitioner's commitment offense, his unstable social history, his lack of viable parole plans, and

21 the Orange County District Attorney's opposition to Petitioner's parole.  (Ex. 7.)

22        As to the commitment offense, the state court found, after summarizing the facts of

23 murder, that Petitioner's "violent actions toward his own mother and the cruel manner in which

24 he killed the victim and handled her body demonstrates an appalling disregard for the victim's

25 suffering and justif[ies] the Board's continued concern over petitioner's suitability for release on

26 parole." (Ex. 7 at 3.)  Petitioner cannot establish that the state court's findings are unreasonable

27 given the evidence indicating that he killed his mother by first strangling her with his bare hands

28 and then—to "put her out of her misery"—strangling her with a necktie until she no longer

Answer to OSC; Mem. of P. & A.                                    *MacMeekin v. Curry*
                                                                  C07-3771 CRB

14

1  moved. (Ex. 2 at 3-5, 36-38; Ex. 3 at 3-6; Ex. 4 at 1-2.) The evidence of this especially

2  atrocious murder is even more heinous given its context—the murder arose from a "verbal

3  argument" between Petitioner and his mother that "violently escalated into a physical altercation

4  when petitioner secured a steak knife and stabbed [his mother]." (Ex. 7 at 2-3.) Thus, contrary

5  to Petitioner's allegations (Pet. at 5-C to 5-E), the state court did not unreasonably uphold the

6  Board's determination that Petitioner carried out the murder in a manner that was "cruel,"

7  showed a "violent rage," and demonstrated a "callous disregard for human suffering." (Ex. 2 at

8  36-38.)

9        In addition, the state court found that Petitioner's "decision not to appear at his own

10  suitability hearing did nothing to ameliorate" the Board's concerns regarding whether Petitioner

11  should be found suitable for parole given the gravity of his murder offense. (*Id.*) This finding by

12  the state court was reasonable. Indeed, the Board hearing panel similarly acknowledged that

13  Petitioner's decision to not appear at the hearing precluded the Board from being able to consider

14  the extent of his insight into the offense. (Ex. 2 at 39-41); *see also* Cal. Code Regs. tit. 15, §

15  2402(b) (providing that in addition to the circumstances of the crime, the Board must consider

16  the inmate's "present attitude toward the crime").

17        Although not addressed or challenged in the petition, the state court also reasonably

18  upheld the Board's findings regarding several other criteria supporting its decision denying

19  Petitioner parole. First, the state court properly noted that while Petitioner's drug and alcohol

20  addictions were deemed to be in "institutional remission," Petitioner had "conceded" he was

21  under the influence of drugs and alcohol at the time of the murder. (Ex. 7 at 3; *see also* Ex. 2 at

22  5-9, Ex. 4 at 2-3.) As a result, the state court reasonably found that Petitioner's "admitted abuse

23  of drugs and alcohol" was relevant to "the overall evaluation of his suitability for parole," and

24  that therefore the Board did not abuse its discretion in considering this factor. (Ex. 7 at 3.)

25  Second, the state court reasonably upheld the Board's finding that Petitioner lacked viable parole

26  plans, stating that while Petitioner had completed "a number of vocations and expressed the

27  desire to reside with an uncle, there were no letters of support to verify both residential plans and

28  prospective job offers." (Ex. 7 at 3-4; *see also* Ex. 2 at 12-18, 38-39.) Third, the state court

Answer to OSC; Mem. of P. & A.                                              *MacMeekin v. Curry*
                                                                            C07-3771 CRB

1   reasonably found that under California Penal Code section 3046(c), the Board did not abuse its

2   discretion in considering the Orange County District Attorney's opposition to Petitioner's parole

3   because the Board is "statutorily required to consider the views of the People's representative

4   when considering the parole suitability of a particular inmate." (Ex. 7 at 3); *see also*

5   *Dannenberg*, 34 Cal. 4th at 1084-85 (finding that public opposition to parole—such as that by

6   the prosecuting District Attorney's Office—must not only be considered, but "may be influential,

7   and even decisive in appropriate cases").

8          In summary, in addition to the commitment offense, the state court properly upheld the

9   Board's decision denying parole on several criteria not challenged by Petitioner in his Petition.

10  Accordingly, to the extent that the *Hill* some-evidence standard applies, Petitioner's claims must

11  be denied because he cannot show that the state court unreasonably applied this standard or made

12  an unreasonable determination of the facts in concluding that "the determination made by the

13  [Board] concerning petitioner's parole suitability is supported by some evidence in the record."

14  (Ex. 7 at 2.)

15  **D.    Petitioner Cannot Demonstrate that the State Court Unreasonably Rejected His
            Remaining Claims.**

16

17          **1.    Petitioner erroneously argues that he is entitled to parole based on the
                    language of California Penal Code section 3041(a).**

18          In addition to challenging the sufficiency of the evidence, Petitioner also contends that he

19  was unlawfully denied parole because the Board is "normally" required to parole all

20  indeterminate life-term prisoners after they become eligible for parole under California Penal

21  Code section 3041. (Pet. at 5-A to 5-B.) Petitioner's allegation is both with merit and fails to

22  state a federal claim. Thus, Petitioner cannot establish that the state court unreasonably denied

23  his claims on this basis.

24          As an initial matter, Petitioner's claim regarding the proper interpretation of California's

25  parole statute is solely a state law claim, and thus is not cognizable in federal habeas corpus. *See,*

26  *e.g., Rose v. Hodges*, 423 U.S. 19, 21 (1975); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197-98 (9th

27  Cir. 1983). Moreover, even if Petitioner is alleging that the state court erroneously interpreted or

28  applied the applicable California law when it denied his petition, a federal court may not

Answer to OSC; Mem. of P. & A.                                          *MacMeekin v. Curry*
                                                                        C07-3771 CRB

1  challenge a state court's interpretation or application of state law, *Middleton v. Cupp*, 768 F.2d

2  1083, 1085 (9th Cir. 1985), or grant relief "on the basis of a perceived error of state law," *Pulley*

3  *v. Harris*, 465 U.S. 37, 41 (1984).  Thus, the Petition should be denied as to this claim.

4        Alternatively, to the extent Petitioner alleges a federal claim, his claim is without merit.

5  As to Petitioner's construction of the language in Penal Code section 3041(a) indicating that

6  parole shall "normally be granted," the California Supreme Court has determined, in construing

7  the *entire* statute, that "the statutory language belies the notion of a *mandatory duty*" to parole

8  any prisoner, nor does it notably restrict the Board's discretion in determining parole suitability.

9  *Dannenberg*, 34 Cal. 4th at 1084-88 (emphasis original).  Rather, Petitioner is only entitled to

10  parole after having been found suitable for parole release.  *Irons v. Carey*, 505 F.3d 846, 851 &

11  n.3 (9th Cir. 2007).  Thus, Petitioner cannot show that the state court unreasonably rejected this

12  claim.

13        **2.**      **Petitioner's Conclusory and Vague Allegation that the Board Discriminated**
                   **"Amongst the Class Serving Indeterminate Sentences" Is Insufficient to**

14                  **Demonstrate that the Board's 2006 Parole Denial Violated His Equal**
                   **Protection Rights.**

15

16        A state prisoner is entitled to habeas corpus relief under 28 U.S.C. § 2254 only if he is

17  held in custody in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C.

18  § 2254(a); *see also* 28 U.S.C. § 2241(c)(3).  A petitioner has the burden of alleging specific facts

19  that show a federal claim is presented, or the petition is subject to dismissal.  *Jones v. Gomez*, 66

20  F.3d 199, 204-05 (9th Cir. 1995).  Specific factual allegations, not conclusions, are required.  *Id.*;

21  *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir. 1970).

22        Here, Petitioner alleges that the Board's 2006 parole denial violated his equal protection

23  rights.  (Pet. at 3-J.)  But while Petitioner describes the factual basis for his due process claims,

24  he makes no specific allegations regarding the grounds for his equal protection claim.  Rather, he

25  merely asserts this claim in conjunction with his due process claim, alleging that the Board may

26  not discriminate "amongst the class serving indeterminate sentences."  (*Id.*)  Petitioner, however,

27  does not allege how the Board discriminated against him.  Accordingly, because the conclusory

28  nature of Petitioner's equal protection claim is insufficient to state a basis for relief, his petition

Answer to OSC; Mem. of P. & A.

*MacMeekin v. Curry*
C07-3771 CRB

1 | should be denied as to this claim.

2 |     Further, even if Petitioner's allegations are not too conclusory, they still fail to

3 | demonstrate an equal protection violation. The Equal Protection Clause of the Fourteenth

4 | Amendment to the Federal Constitution provides that "[n]o state shall . . . deny to any person

5 | within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. To prevail on

6 | an equal protection claim, Petitioner must initially show that he was treated differently from

7 | other similarly situated persons. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439

8 | (1985); *Fraley v. United States Bureau of Prisons,* 1 F.3d 924, 926 (9th Cir. 1993) (per curiam).

9 | But here Petitioner does not attempt to show that he was treated differently from other similarly

10 | situated inmates. Moreover, the mere fact that some inmates convicted of similar offenses to his

11 | may have been paroled sooner than Petitioner does not establish the basis for an equal protection

12 | claim. *See Sturm v. Cal. Adult Authority,* 395 F.2d 446, 448-449 (9th Cir. 1967) (in the context

13 | of an equal protection claim challenging the fact that the petitioner had been denied parole while

14 | his co-defendant had already been released to parole, the Court held that "the fact that other

15 | prisoners have had their sentence reduced, or been granted parole, affords no ground for

16 | complaint by petitioner"). Accordingly, Petitioner cannot show that the state court unreasonably

17 | determined that he failed to "articulate a viable and meritorious argument supporting petitioner's

18 | alleged infringement of his right to equal protection." (Ex. 7 at 4, n.1.)

19 | **CONCLUSION**

20 |     Under AEDPA, the Court may grant a writ of habeas corpus only if it determines that the

21 | state court findings denying relief were contrary to, or an unreasonable application of, clearly

22 | established federal law, or involved an unreasonable interpretation of the facts. Petitioner fails to

23 | prove this. First, he received all process due under *Greenholtz,* the only clearly established

24 | federal law specifically addressing the process due at parole consideration hearings. Second,

25 | even if the some-evidence standard applies, Petitioner cannot show that the state court decision

26 | denying him relief was based on either an unreasonable application of this standard under clearly

27 | established Supreme Court law or that it was based an unreasonable determination of the facts.

28 | //

Answer to OSC; Mem. of P. & A.                          *MacMeekin v. Curry*
*C07-3771 CRB*

1    Lastly, petitioner's equal protection clause claim is without merit. For these reasons, Respondent

2    respectfully requests that the Petition for Writ of Habeas Corpus be denied.

3           Dated: January 9, 2008

4                              Respectfully submitted,

5                              EDMUND G. BROWN JR.
                               Attorney General of the State of California

6                              DANE R. GILLETTE
                               Chief Assistant Attorney General
7
                               JULIE L. GARLAND
8                              Senior Assistant Attorney General

9                              ANYA M. BINSACCA
                               Supervising Deputy Attorney General

10

11                             *Scott C. Mather* (signature)

12

13                             SCOTT C. MATHER
                               Deputy Attorney General
                               Attorneys for Respondent

14

15   40198211.wpd

16   SF2007403144

17

18

19

20

21

22

23

24

25

26

27

28

Answer to OSC; Mem. of P. & A.                                      *MacMeekin v. Curry*
                                                                   C07-3771 CRB

                                        19

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **MacMeekin v. Curry**

No.:    **C07-3771 CRB**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **January 10, 2008,** I served the attached

### ANSWER TO ORDER TO SHOW CAUSE;
### MEMORANDUM OF POINTS AND AUTHORITIES

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Keith MacMeekin, D-30728**
**Correctional Training Facility**
**P.O. Box 689**
**Soledad, CA 93960-0689**
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **January 10, 2008**, at San Francisco, California.

| | |
|---|---|
| J. Palomino | _J. Palomino_ |
| Declarant | Signature |

40204406.wpd