IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH MacKEEKIN,              )<br>                                              )<br>        Petitioner,                  )<br>                                              )<br>    vs.                                    )<br>                                              )<br>BEN CURRY, Warden,         )<br>                                              )<br>        Respondent.             )<br>_____ ) | No. C 07-3771 CRB (PR)<br><br>ORDER DENYING<br>PETITION FOR A WRIT OF<br>HABEAS CORPUS |

Petitioner, a state prisoner incarcerated at the Correctional Training Facility in Soledad, California, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging the California Board of Parole Hearings' ("BPH") March 14, 2006 decision to deny him parole.

Per order filed on November 16, 2007, the court found that petitioner's claim that the BPH's decision finding him not suitable for parole does not comport with due process and equal protection appears colorable under § 2254, when liberally construed, and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer to the order to show cause and petitioner has filed a traverse.

## BACKGROUND

On April 25, 1986, petitioner pleaded guilty to second-degree murder in Orange County superior court and was sentenced to 15 years to life in state prison with the possibility of parole.

On March 14, 2006, petitioner appeared before the BPH for a subsequent parole consideration hearing. The BPH found him unsuitable for parole and denied him another hearing for two years.

Petitioner unsuccessfully challenged the BPH's March 14, 2006 decision in the state superior, appellate and supreme courts. After the Supreme Court of California denied his petition for review on May 23, 2007, the instant federal petition for a writ of habeas corpus followed.

## DISCUSSION

A.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." White v. Lambert, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." Id. at § 2254(d).  Under this standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

B.   Legal Claims and Analysis

Petitioner seeks federal habeas corpus relief from the BPH's March 14, 2006 decision finding him not suitable for parole, and denying him a subsequent hearing for two years, on the ground that the decision does not comport with due process and equal protection.  Petitioner claims that the BPH's decision is not supported by some evidence in the record because it is based on unchanging factors such as the commitment offense and his pre-commitment history. Petitioner also claims that the BPH must provide him with a fixed parole release date under California Penal Code section 3041(a) and that its continued refusal to do so has amounted to a violation of his equal protection rights.

California's parole scheme provides that the board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed

at this meeting." Cal. Penal Code § 3041(b). In making this determination, the board must consider various factors, including the prisoner's social history, past criminal history, and base and other commitment offenses, including behavior before, during and after the crime. See Cal. Code Regs. tit. 15, § 2402(b) – (d).

California's parole scheme "gives rise to a cognizable liberty interest in release on parole which cannot be denied without adequate procedural due process protections." Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002). It matters not that, as is the case here, a parole release date has not been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003).

Petitioner's due process rights require that "some evidence" support the parole board's decision finding him unsuitable for parole. Sass, 461 F.3d at 1125 (holding that the "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition); Biggs, 334 F.3d at 915 (same); McQuillion, 306 F.2d at 904 (same). This "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the BPH] were without support or otherwise arbitrary." Hill, 472 U.S. at 457. Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id. at 455-56 (quoted in Sass, 461 F.3d at 1128).

Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability. Biggs, 334 F.3d at 915; McQuillion, 306 F.3d at 904. Relevant in this inquiry "is whether the prisoner was afforded

4

an opportunity to appear before, and present evidence to, the board." <u>Morales v. California Dep't of Corrections</u>, 16 F.3d 1001, 1005 (9th Cir. 1994), <u>rev'd on other grounds</u>, 514 U.S. 499 (1995).  In sum, if the parole board's determination of parole unsuitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision.  <u>Rosas v. Nielsen</u>, 428 F.3d 1229, 1232 (9th Cir. 2005).

The record shows that the BPH panel afforded petitioner an opportunity to speak and present his case at the hearing.  Petitioner declined to appear personally, but, through counsel, presented his case and provided a statement.  The panel considered all the evidence in the record and issued a reasoned decision denying parole.

The panel concluded that petitioner was "not yet suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." Mar. 14, 2006 Hr'g Tr. at 36 (Resp't Ex. 2).  It based its decision on several grounds, including the circumstances surrounding the commitment offense.

On September 24, 1985, Las Palmas police officers responded to calls from an apartment complex reporting sounds of a struggle and of a woman screaming from an apartment where petitioner (then 18 years old) and his mother lived.  After the police entered the apartment, they observed signs of a struggle.  In the master bedroom, the police located the victim (the mother) lying on the floor.  The victim had blood and lacerations to both of her hands, blood in her mouth, her eyes were closed and puffy, and there was a man's necktie around her neck.  A subsequent autopsy determined that the cause of death was strangulation. <u>Id.</u> at 3-4.

/

An investigation revealed that the victim's car was missing and that petitioner had not reported to work.  A witness later stated that the victim and petitioner had been having problems due to his alcohol and cocaine use.  The witness also stated that the victim had previously kicked petitioner out of the apartment about a month before the murder, but had subsequently let him move back in.  The witness indicated that petitioner and his mother each had a bad temper, and that they argued and had fistfights.  Id. at 5.

On September 26, 1985, petitioner was detained by immigration officers when he attempted to return to the United States after having traveled to Mexico.  He subsequently provided a written confession to the murder of his mother.  Id.

According to petitioner, between the hours of 7:00 p.m. and 5:00 a.m. on September 23 and 24, 1985, he consumed sixteen eight-ounce bottles of beer, smoked two joints of marijuana and snorted one and a half grams of cocaine.  When his mother tried to wake him on September 24 at about 7:00 a.m. urging him to go to work, they got into a "physical" argument.  Petitioner picked up a knife from the kitchen table and "warned his mother to back off."  Petitioner's mother tried to take the knife from him and during the altercation he backed up against the wall, causing a mirror to fall on his foot.  In response, petitioner claimed that he bent down and "somehow cut into his mother's side."  When she screamed, he threw the knife away.  Petitioner's mother then began to beat him on the face and, in response, he "went for her neck."  Petitioner choked her with both hands and, not knowing if she was dead yet, decided "to put her out of her misery."  Petitioner took a necktie, knotted it around his mother's neck and strangled her until she no longer moved.  After dragging his mother's body into her bedroom , petitioner's took his mother's wallet from her pursue, grabbed some clothes and disconnected the phone line to prevent her from calling the police if

she were still alive. Petitioner went out the front door, locking it behind him, and took his mother's vehicle. He went looking for a friend in Los Angeles, who advised him to go to Mexico. Petitioner claims that at some point later he decided to turn himself in.  Id. at 6-8.

  The panel found that the murder was carried out in a manner that was "cruel" and demonstrated a "violent rage." Id. at 36, 38. It noted that as a result of an argument about his not going to work, petitioner stabbed his mother with a knife, began to strangle her with his bare hands and, to "put her out of her misery," strangled her with a necktie until she no longer moved. Id. at 37. The panel also found that the murder was carried out in a manner that "demonstrates a callous disregard to human life," not only because of how petitioner killed his mother, but because petitioner disconnected the telephone so that his mother could not call for help if she survived his attack. Id. The panel found that petitioner's criminal history consisted of only "two minor juvenile arrests," but that he has "a social history that includes alcohol abuse at a very young age as well as illegal narcotics use." Id. at 38. The panel found that petitioner had no viable parole plans and recommended that he "develop two solid residential plans as well as continu[e] his search for acceptable employment plans." Id. at 38-39. It noted that having two residential plan options made sense for petitioner because several of his prior residential plans had fallen through (e.g., he was going to live with his wife, but they got divorced, and he was going to live with his brother, but the brother could not be located). Id. at 39. The panel found that petitioner's psychological evaluation was favorable, but conditional – "'the inmate would pose a low risk of future dangerousness as long as he abstained from alcohol or illegal narcotics.'" Id. at 38. The panel found that it would have liked to discuss with petitioner the extent of his insight into the offense because "it is

7

only through an exploration of his insight into the causative factors of this crime that the Board can be assured that the inmate has put these factors behind him and is not likely to repeat these actions." Id. at 39-40. The panel commended petitioner on his progress in prison, including being disciplinary-free, earning his GED and college credits, his positive work reports, AA attendance and vocational achievements; however, it concluded that "those positive aspects of his behavior do not outweigh the factors of unsuitability." Id. at 41.

The state superior court affirmed the decision of the BPH. The court found that the BPH's "determination . . . concerning petitioner's parole suitability is supported by some evidence in the record." In re MacMeekin, No. M-10959, slip op. at 2 (Cal. Super. Ct. Aug. 23, 2006) (Resp't Ex. 7). The court explained that the board properly relied on the circumstances surrounding petitioner's commitment offense (noting that "the cruel manner in which he killed the victim and handled her body demonstrate an appalling disregard for the victim's suffering"), petitioner's unstable social history (noting that petitioner "admitted abuse of drugs and alcohol" from an early age), petitioner's lack of viable parole plans (noting that although petitioner had completed "a number of vocations and expressed the desire to reside with an uncle, there were no letters of support to verify both residential plans and prospective job offers") and opposition from the district attorney's office. Id. at 3-4. The court noted that there were positive factors, but concluded that the board reasonably determined that they did not outweighed the factors indicating unsuitability. Id. at 4-5.

The California Court of Appeal summarily denied a subsequent petition similarly challenging the March 14, 2006 decision of the BPH and the Supreme Court of California denied review.

1    The state courts' rejection of petitioner's due process claim was not
2    contrary to, or involved an unreasonable application of, the Hill standard, or was
3    based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d).
4    The BPH's March 14, 2006 decision to deny petitioner parole is supported by
5    some evidence in the record and that evidence bears some indicia of reliability.
6    See, e.g., Rosas, 428 F.3d at 1232-33 (upholding denial of parole based on
7    gravity of offense and psychiatric reports); Biggs, 334 F.3d at 916 (upholding
8    denial of parole based solely on gravity of offense and conduct prior to
9    imprisonment); Morales, 16 F.3d at 1005 (upholding denial of parole based on
10   criminal history, cruel nature of offense and need for further psychiatric
11   treatment). The inquiry under Hill is simply "whether there is any evidence in
12   the record that could support the conclusion reached by the [BPH]." Hill, 474
13   U.S. at 455-56 (emphasis added). There is – the facts surrounding the crime
14   reasonably suggest that it was carried out in a cruel and callous fashion;
15   petitioner has a unstable social history characterized by alcoholic and abusive
16   parents, and alcohol and drug addiction at an early age; and petitioner lacked
17   adequate parole plans with verifiable residency and employment offers. Cf. Cal.
18   Code Regs. tit. 15, § 2402(c) & (d) (listing circumstances tending to show
19   unsuitability for parole and circumstances tending to show suitability). Although
20   there were factors tending to support suitability, it is not up to this court to
21   "reweigh the evidence." Powell v. Gomez, 33 F.3d 39, 42 (9th Cir. 1994). The
22   panel's legitimate concern with the facts surrounding the commitment offense,
23   petitioner's unstable social history and lack of adequate parole plans constitutes
24   some evidence under Hill in support of the board's determination that petitioner
25   posed an unreasonable risk of danger to society if released from prison. See Hill,
26   474 U.S. at 455-56.

9

|   |   |
|---|---|
| 1 | Petitioner argues that the BPH's reliance on unchanging factors such as his |
| 2 | commitment offense and pre-commitment social history in determining that he is |
| 3 | not suitable for parole conflicts with the Ninth Circuit's decisions in <u>Biggs</u> and |
| 4 | <u>Irons v. Carey</u>, 505 F.3d 846 (9th Cir. 2007).  In <u>Biggs</u>, the Ninth Circuit upheld |
| 5 | the initial denial of a parole release date based solely on the nature of the crime |
| 6 | and the prisoner's conduct before incarceration, but cautioned that, over time, |
| 7 | denying a prisoner parole strictly because of the nature of his offense and his |
| 8 | prior conduct "would raise serious questions involving his liberty interest in |
| 9 | parole . . . and could result in a due process violation."  <u>Biggs</u>, 334 F.3d at |
| 10 | 916-17.  In <u>Irons</u>, the Ninth Circuit again upheld the denial of a parole release |
| 11 | date based solely on the nature of the crime, but reiterated its "hope that the |
| 12 | Board will come to recognize that in some cases, indefinite detention based |
| 13 | solely on an inmate's commitment offense, regardless of the extent of his |
| 14 | rehabilitation, will at some point violate due process, given the liberty interest in |
| 15 | parole that flows from the relevant California statutes." <u>Irons</u>, 505 F.3d at 854 |
| 16 | (citing <u>Biggs</u>, 334 F.3d at 917).  In the instant case, the BPH did not base its |
| 17 | decision solely on petitioner's commitment offense and/or pre-commitment |
| 18 | history.  The BPH also found that petitioner's lack of adequate parole plans |
| 19 | weighed against his release on parole.  This finding alone constitutes some |
| 20 | evidence under <u>Hill</u> in support of the board's determination that petitioner posed |
| 21 | an unreasonable risk of danger to society if released from prison. See <u>Hill</u>, 474 |
| 22 | U.S. at 455-56 ; <u>see also</u> <u>In re Honesto</u>, 130 Cal. App. 4th 81, 97 (Cal. Ct. App. |
| 23 | 2005) (lack of adequate parole plan indicated prisoner was not yet suitable for |
| 24 | parole). |
| 25 | Petitioner also claims that the BPH must provide him with a fixed parole |
| 26 | release date under California Penal Code section 3041(a) and that its continued |
| 27 | |
| 28 | 10 |

|   |   |
|---|---|
| 1 | refusal to do so has amounted to a violation of his equal protection rights.  The |
| 2 | claims are without merit. |
| 3 | While California Penal Code section 3041, subsection (a) provides that the |
| 4 | BPH "shall normally set a parole release date" at a prisoner's first parole hearing, |
| 5 | subsection (b) provides that the BPH shall not set a parole release date if "it |
| 6 | determines that the gravity of the current convicted offense or offenses, or the |
| 7 | timing and gravity of current or past convicted offense or offenses, is such that |
| 8 | consideration of the public safety requires a more lengthy period of incarceration |
| 9 | for this individual . . . ."  The Supreme Court of California has held that the |
| 10 | "natural and reasonable" reading of the statute is that subsection (a) applies only |
| 11 | if subsection (b) does not apply and, therefore, the BPH will not set a parole date |
| 12 | under subsection (a) if it determines that, under subsection (b), public safety |
| 13 | requires a lengthier incarceration.  In re Dannenberg, 34 Cal. 4th 1061, 1087 |
| 14 | (2005).  This procedure, "in which the suitability determination precedes any |
| 15 | effort to calculate a parole release date, has long been noted in the case law."  Id. |
| 16 | at 1080-81.  This court is bound by the Supreme Court of California's |
| 17 | interpretation of California law.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) |
| 18 | (state court's interpretation of state law binds federal court sitting in habeas); see |
| 19 | also Irons, 505 F.3d at 851 & n.3 (petitioner is only entitled to a parole date after |
| 20 | having been found suitable for parole release). |
| 21 | "The Equal Protection Clause of the Fourteenth Amendment commands |
| 22 | that no State shall 'deny to any person within its jurisdiction the equal protection |
| 23 | of the laws,' which is essentially a direction that all persons similarly situated |
| 24 | should be treated alike."  City of Cleburne v. Cleburne Living Center, 473 U.S. |
| 25 | 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)).  Petitioner |
| 26 | claims that the BPH has discriminated "amongst the class serving indeterminate |
| 27 |   |
| 28 | 11 |

sentences" in violation of his equal protection rights.  He makes no showing that he was treated differently from other similarly situated individuals, however.  See Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir. 2004) (to establish equal protection claim, plaintiff must show that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment).  Moreover, the mere fact that some inmates convicted of similar offenses to his may have been paroled sooner that petitioner does not establish an equal protection claim.  See Sturm v. Cal. Adult Authority, 395 F.2d 446, 448-49 (9th Cir. 1967) ("the fact that other prisoners have had their sentence reduced, or been granted parole, affords no grounds for complaint by petitioner").  The state courts' rejection of petitioner's equal protection claim cannot be said to have been be objectively unreasonable.  See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 409.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED:  May 27, 2008

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\HC.07\MacMeekin, K1.denial.wpd